MURRAY W. SALES & CO. *v.* GERMAN-AMERICAN SAVINGS BANK.

BANKS AND BANKING—CORPORATIONS—LIEN ON STOCK—PAST DUE INDEBTEDNESS—INTENT.

> Defendant bank had no lien on its stock as against the assignee of a stockholder, where the bank took a note and mortgage from the stockholder, due in one year, which included the amount of an unsecured note, and, after an investigation, repudiated the mortgage as worthless and so notified the stockholder, but marked the unsecured note "Paid," and continued to carry the loan in its mortgage loan account and so reported it to the banking commissioner on several occasions in its sworn statements; by its acts, it relied on the new note and mortgage rather than the unsecured note, and had no past due indebtedness from the stockholder as the basis for a lien on the stock.

Appeal from St. Clair; Tappan, J. Submitted January 18, 1916. (Docket No. 83.) Decided September 26, 1916.

Bill by Murray W. Sales & Company against the German-American Savings Bank to have certain shares of stock in defendant bank transferred to complainant. From a decree dismissing the bill, complainant appeals. Reversed, and decree entered for complainant.

*Lincoln Avery* (*Frank R. Schell,* of counsel), for complainant.

*P. H. Phillips,* for defendant.

BIRD, J. The question made by the pleadings in this case is whether the complainant is entitled to have 15 shares of defendant's capital stock transferred to it upon the books of the bank. The chancellor was of the opinion that it did not have such right and dismissed the complainant's bill.

The material facts underlying the controversy are: That Watson Bros., a plumbing firm of Port Huron, were indebted to complainant for merchandise, and to secure a part of their indebtedness they executed and delivered a promissory note to complainant for $1,500, dated October 3, 1912, due in 30 days. Robert Watson, one of the copartners, assigned to complainant 15 shares of defendant's capital stock as collateral security thereto. Later, on April 8, 1913, complainant requested the defendant to transfer the stock to it on the books of the bank. Defendant declined to do so, and based its refusal upon the fact that Watson Bros. was indebted to it, and that the indebtedness was past due. It claimed to be the holder of two notes, one for $3,000, dated October 28, 1911, and one for $1,000, dated March 26, 1912.

The sole question involved is whether, on April 8, 1913, the date of the refusal to transfer the stock, the bank had any of Watson Bros.' paper which was past due. Defendant concedes it took a new note for $3,000 on January 8, 1913, payable in one year, secured by a real estate mortgage, which was duly recorded, but that it learned within a few days thereafter that the mortgage was invalid, because the land mortgaged was owned by Watson and his wife by the entireties, and that upon learning this fact the mortgage transaction was repudiated. Defendant also concedes that it marked the unsecured note of $3,000 "Paid," and that it transferred the loan from the commercial accounts to the mortgage loan accounts and after repudiating the mortgage transaction the books were never corrected, and that it continued to carry the note in its mortgage loan account, and so reported it to the banking commissioner on several occasions, and, further, that the note and mortgage are still in its possession, although Watson was advised that he could have them.

Plaintiff argues from these admissions that defendant's acts in dealing with the loan show conclusively that it did accept the new note and mortgage in lieu of the unsecured note, and that, as the mortgage note was given for a year, the loan was not due when defendant was requested to transfer the stock. That defendant should have accepted the note and mortgage for its unsecured paper, that it should have canceled the unsecured note and transferred it from the commercial accounts to the mortgage loan accounts, that after investigating and learning the facts about the title to the land that it should have repudiated the mortgage deal, all appear natural and consistent; and while its failure to transfer the loan back to the commercial accounts, and its failure to report it correctly to the State banking department, are somewhat inconsistent with its present position, the retention of the loan among the mortgage loans could probably be disposed of on the theory that it was a mere matter of bookkeeping.

But one phase of the matter I have not been able to dispose of on that ground. It is inexplicable upon any theory of self-interest that the bank should mark the unsecured note paid on February 6th, a month after it had investigated and learned, as it says, that it was worthless, unless it had intended to accept the mortgage security. Had it marked the note paid as soon as received, or before it had investigated, it would have been consistent and its failure to cancel the marking after learning of the facts, might not be open to serious criticism, but when it learns the truth in two or three days after it is received, and then, after a lapse of a month, it deliberately cancels the note, it cannot be passed by as a matter of mere bookkeeping. I have looked in vain for some reasonable explanation of this act. The failure to transfer the loan back to the commercial side was undoubtedly to avoid carrying past-

due paper. This reason probably accounts for its report to the commissioner; but not even a selfish reason is suggested why the note should have been marked "Paid" 30 days after it was learned that its substitute was invalid. Defendant's failure to return the note and mortgage to the maker is explained in part by the cashier's statement that Watson was advised, soon after it learned the mortgage was invalid, that he could have the papers, although it is significant that no offer to return them is shown after the note was marked "Paid." The defendant is a corporation, and speaks and acts largely through its records, and it ought not to be permitted to come into court and say that the fact is totally at variance with nearly every entry in the transaction on its books, unless some very good explanation is given for so doing. The act of marking the note "Paid," supported as it is by other entries on its books, is convincing that for some reason which is not apparent defendant concluded to accept the new note and mortgage in lieu of the unsecured note. Such a conclusion is consistent with the entries on its books, and is in accord with its sworn statements to the banking commissioner.

The decree will be reversed, and one entered in conformity herewith, with costs to complainant.

STONE, C. J., and KUHN, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.